Elliot E. Polebaum
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
elliot.polebaum@friedfrank.com

*Attorneys for Plaintiff*
*Thales Alenia Space France*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THALES ALENIA SPACE FRANCE, <br><br> Plaintiff, <br><br> - against - <br><br> THERMO FUNDING COMPANY, LLC, <br><br> Defendant. | 13 Civ. 00712 (SAS) <br><br> ECF CASE <br><br> **FIRST AMENDED COMPLAINT** |

Plaintiff Thales Alenia Space France ("Thales"), for its First Amended Complaint against Defendant Thermo Funding Company, LLC ("Thermo"), alleges as follows:

### Nature of the Claim

1.  This litigation concerns Thermo's refusal to honor its contracts as written.

2.  Pursuant to the Settlement Agreement by and between Thales, Thermo, and Globalstar, Inc., dated June 24, 2012 (the "Settlement Agreement"), Thermo agreed to pay Thales the sum of $12,500,000 no later than December 31, 2012. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A. Thermo has not paid and refuses to pay Thales the $12,500,000, in breach of the Settlement Agreement.

## The Parties

3.  Plaintiff Thales Alenia Space France is a French company with its principal place of business at 100, Boulevard du Midi, 06156 Cannes la Bocca, France. Thales designs and manufactures satellites, satellite systems and orbital infrastructures.

4.  Defendant Thermo Funding Company, LLC is a private equity firm. Thermo is incorporated as a Colorado limited liability company, with its principal place of business at 1735 Nineteenth Street, Denver, Colorado, 80202. Thermo is a single-member limited liability company. Thermo's sole member is a family trust, and Jay Monroe, III is sole trustee of this family trust. Mr. Monroe is a citizen of the State of Colorado and/or Louisiana. The sole member of Thermo accordingly is a citizen of Colorado and/or Louisiana. In the alternative, the sole member of Thermo is a citizen of another State of the United States.

## Jurisdiction

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

6.  The parties agree that venue is proper in this district. The parties' agreement provides: "Any dispute under this Agreement or any action brought to enforce the terms of this Agreement shall be brought only in a court of competent jurisdiction in New York. The Parties specifically consent to jurisdiction in New York for purposes of enforcing the terms of this Agreement." Accordingly, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(3).

## Background

7.  This case involves a straightforward breach of contract claim resulting from Thermo's intentional breach of the express terms of the Settlement Agreement, which required Thermo to pay Thales a sum certain by a specified date. Specifically, pursuant to Article 2(a) of

the Settlement Agreement, Thermo unconditionally agreed to pay Thales the sum of $12,500,000 no later than December 31, 2012. Thermo has failed to pay any of this amount. Thermo thereby breached the Settlement Agreement, and Thales is entitled to recover damages of no less than $12,500,000 as a result of such breach.

*Globalstar Contracts With Thales*

8. Thermo has a controlling interest in Globalstar, Inc. ("Globalstar"). Globalstar is a provider of satellite voice, data and tracking services. Globalstar owns and operates a constellation of low-earth orbit ("LEO") satellites.

9. On or about November 30, 2006, Globalstar entered into a contract with Thales's predecessor-in-interest, Alcatel Alenia Space France, for, among other things, the procurement of 48 LEO satellites (the "2006 Contract"). These 48 satellites were to be deployed as Globalstar's second generation constellation of satellites.

10. Globalstar and Thales subsequently executed an Amended and Restated Contract for the Construction of the Globalstar Satellite for the Second Generation Constellation, dated June 3, 2009 (the "2009 Contract"). The 2009 Contract amends the pricing and certain other terms of the 2006 Contract.

*Thales's Guarantee and Reimbursement Agreement*

11. Globalstar obtained financing for the 2009 Contract (the "Financing") by entering into a Facility Agreement with Compagnie Française d'Assurance pour le Commerce Extérieur, the French export credit agency ("COFACE"), and certain French banks ("Lenders"). The Facility Agreement required Globalstar, *inter alia*, to fund a Debt Service Reserve Account ("DSRA").

12. COFACE and/or the Lenders requested that Thales provide a guarantee in a maximum amount of $12,500,000, in support of Globalstar's DSRA obligation (the "Guarantee").

13. Thales agreed to provide the Guarantee on the condition that Thermo, the controlling shareholder of Globalstar, reimburse Thales for any payments made under the Guarantee. Thermo agreed, and Thales and Thermo entered into the Reimbursement Agreement dated June 5, 2009. A true and correct copy of the Reimbursement Agreement is attached hereto as Exhibit B. The Reimbursement Agreement provides, *inter alia*, that Thermo shall reimburse all Thales payments under the Guarantee not later than the "Final Maturity Date," defined as the earlier of December 31, 2012, or the tenth (10th) business day following a Globalstar Change of Control (as defined in the Reimbursement Agreement).

*Thermo Becomes Obligated to Reimburse Thales*

14. COFACE and/or the Lenders ultimately demanded that Thales fund the DSRA in the maximum amount of $12,500,000. Thales paid the $12,500,000 in accordance with its Guarantee.

15. Thales's payment of $12,500,000 under the Guarantee, in turn, triggered Thermo's reimbursement obligation to Thales, as set forth in the Reimbursement Agreement.

*The Arbitration and Settlement Agreement*

16. On or about June 3, 2011, Globalstar initiated arbitration proceedings against Thales before the International Centre for Dispute Resolution of the AAA (the "ICDR"), asserting claims under the 2009 Contract (the "Arbitration"). Thales answered and filed counterclaims against Globalstar. The ICDR constituted a three-member arbitral tribunal, sitting in New York, to decide the parties' respective claims and counterclaims (the "Tribunal").

17. On May 10, 2012, the ICDR communicated the Tribunal's Award to the parties. The Tribunal rejected all of Globalstar's claims. On Thales's counterclaims, the Tribunal determined, among other things, that: (1) Phase 3 of the 2009 Contract, concerning the manufacture of 23 LEO satellites, had terminated for Globalstar's convenience; (2) Globalstar accordingly had to pay Thales termination charges of €52,676,770; and (3) if Globalstar wanted to order future, additional satellites from Thales, it first had to pay Thales the termination charges of €52,676,770.

18. The Award resulted in settlement discussions between Thales, Globalstar and Thermo.

19. Thales, Globalstar and Thermo ultimately signed the Settlement Agreement and a separate Release Agreement.

20. Pertinent for this dispute, the Settlement Agreement recites that "Thales has paid $12,500,000 into the DSRA pursuant to the Guarantee." Ex. A, page 1, fifth "whereas" clause. The Settlement Agreement also recites that, in accordance with the Reimbursement Agreement, Thermo "agreed to reimburse Thales for amounts paid by Thales into the DSRA pursuant to the Guarantee." Ex. A, page 1, fourth "whereas" clause.

21. The Settlement Agreement addresses Thermo's obligation to reimburse Thales for the amounts it paid pursuant to the Guarantee. The Settlement Agreement states: "On the New Contract Effective Date or on December 31, 2012, whichever is earlier, Thermo shall pay to Thales $12,500,000 in relation to the DSRA, by wire transfer." Ex. A, Art. 2(a).

22. The Settlement Agreement defines "New Contract Effective Date" as "the date on which the conditions to the New Contract are satisfied and the New Contract becomes effective pursuant to its terms." "New Contract" refers to a separate agreement between Thales and

Globalstar for Thales to manufacture and deliver six LEO satellites to Globalstar. The New Contract Effective Date has not yet occurred.

*Thermo Refuses Honor its Contractual Obligations*

23. On or about October 25, 2012, Jay Monroe, the CEO of Globalstar and a principal of Thermo, informed Thales that Thermo would not pay the $12,500,000 on December 31, 2012, as required by the Settlement Agreement, unless Globalstar obtained financing for the New Contract. According to Mr. Monroe, the "spirit" of the Settlement Agreement supported postponing Thermo's payment until Globalstar first obtained financing for the New Contract.

24. In a letter dated November 6, 2012, Thales demanded assurances from Thermo that Thermo would pay the $12,500,000 by December 31, 2012. Thales explained that the "spirit" of the Settlement Agreement was not, and could not have been, to make Thermo's payment contingent upon Globalstar's obtaining financing for the New Contract. The Settlement Agreement expressly and unambiguously requires Thermo to pay the $12,500,000 on the "earlier" of December 31, 2012 or the New Contract Effective Date. Globalstar's obtaining of financing, and the triggering of the New Contract Effective Date, can only advance the timing of payment of the $12,500,000 to a date prior to December 31, 2012; it cannot delay payment past December 31, 2012.

25. Thermo refused to provide assurances that it would pay the $12,500,000 by December 31, 2012.

26. Thermo failed to pay Thales $12,500,000 by December 31, 2012.

6

## CLAIM FOR RELIEF

### Breach of Contract

27. Thales repeats and realleges the allegations in paragraphs 1-26 as if set forth fully herein.

28. The Settlement Agreement is a valid and enforceable contract.

29. The Settlement Agreement obligated Thermo to pay Thales the sum of $12,500,000 on the New Contract Effective Date or on December 31, 2012, whichever date is earlier.

30. Thermo did not pay Thales $12,500,000 on December 31, 2012.

31. Thermo has never paid Thales the $12,500,000 required by the Settlement Agreement.

32. Thermo breached the Settlement Agreement by failing to pay Thales $12,500,000 on December 31, 2012.

33. Thales has been damaged as a direct and proximate result of Thermo's breach.

### Prayer for Relief

WHEREFORE, Thales prays for judgment:

(A) Awarding Thales damages against Thermo in the amount of $12,500,000;

(B) Awarding Thales pre- and post-judgment interest to the maximum extent permitted by law;

(C) Awarding Thales its attorneys' fees, costs and expenses in bringing this claim; and

(D) Granting Thales such other and further relief as this Court deems just and proper.

Dated: Washington, DC
June 11, 2013

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: _____
           Elliot E. Polebaum
        elliot.polebaum@friedfrank.com

801 17th Street, NW
Washington, DC 20006
(202) 639-7000

*Attorneys for Plaintiff*
*Thales Alenia Space France*

8834013