UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

THALES ALENIA SPACE FRANCE,

Plaintiff,

- against -

THERMO FUNDING COMPANY, LLC,

Defendant.

-------------------------------------------------- X

**OPINION AND ORDER**

**13 Civ. 712 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

Plaintiff Thales Alenia Space France ("Thales") filed this action

against Thermo Funding Company, LLC ("Thermo") for an alleged breach of

contract.  Thermo moved to dismiss for failure to state a claim and lack of personal

jurisdiction, arguing that Thales did not adequately plead the validity of the

agreement between the parties (Thales alleges personal jurisdiction on the basis of

the agreement's forum-selection clause).  Because Thales has plausibly alleged the

existence of a binding contract between the parties, Thermo's motion to dismiss

under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) is denied.

1

## II.    FACTUAL BACKGROUND

This action arises from a series of contractual relationships between three entities.  Thales is a French aerospace company involved in the manufacture of low Earth orbit ("LEO") satellites.[1]  Globalstar, Inc. ("Globalstar") is a provider of satellite voice and data services that operates LEO satellites.[2]  Thermo is a private equity firm that owns a controlling interest in Globalstar.[3]

### A.    The Parties' Business Relationships

In late 2006, Globalstar contracted with Thales's predecessor, Alcatel Alenia Space France, for the purchase of forty-eight new LEO satellites.[4]  These were to be Globalstar's "second generation constellation of satellites."[5]  In 2009, Globalstar and Thales executed a new agreement (the "Supply Agreement") amending the pricing and other terms of the 2006 contract.[6]

---

[1]    *See* First Amended Complaint ("FAC") ¶¶ 3, 9.

[2]    *See id.* ¶ 8.

[3]    *See id.* ¶¶ 4, 8.

[4]    *See id.* ¶ 9.

[5]    *Id.*

[6]    *See id.* ¶ 10.

In order to fund this arrangement, Globalstar arranged for financing from the Compagnie Française d'Assurance pour le Commerce Extérieur ("COFACE") — the French export credit agency — and several French banks.[7]  As part of this agreement, Globalstar was required to fund a Debt Service Reserve Account ("DSRA") of $12.5 million, and COFACE and the banks requested Thales to provide a guarantee of the full amount of the DSRA.[8]  Thales agreed, provided that Thermo reimburse Thales for any payments it makes under the guarantee.[9]  This arrangement between Thermo and Thales was memorialized in a separate 2009 contract (the "Reimbursement Agreement"), which provided that such reimbursements must be made by December 31, 2012, or within ten business days of a change in control of Globalstar.[10]  The Reimbursement Agreement also contained English choice-of-law and forum-selection provisions.[11]  Ultimately,

---

[7]      *See id.* ¶ 11.

[8]      *See id.* ¶¶ 11-12.

[9]      *See id.* ¶ 13.

[10]     *See id.*

[11]     *See* 6/5/09 Reimbursement Agreement ("Reimbursement Agreement"), Ex. B to FAC, at 9.

Thales paid the maximum $12.5 million, thereby obligating Thermo to reimburse it for the same amount.[12]

### B.   The Thales-Globalstar Arbitration

In 2011, Globalstar initiated arbitral proceedings against Thales in relation to its obligations under the Supply Agreement, and Thales filed counterclaims against Globalstar.[13]   Thales prevailed in the arbitration, winning an approximately €52.7 million award on its counterclaims.[14]   Thales then initiated an action in this district to confirm and domesticate the award.[15]

Notwithstanding this dispute, Globalstar wished to continue its relationship with Thales and to purchase six additional satellites.[16]   To this end, Thales, Globalstar, and Thermo all entered into settlement discussions, which ultimately resulted in several 2012 agreements, including the "Settlement

---

[12]   *See* FAC ¶¶ 14-15.

[13]   *See id.* ¶ 16; 6/24/12 Settlement Agreement ("Settlement Agreement"), Ex. A to FAC, at 1.

[14]   *See* FAC ¶ 17.

[15]   *See* Settlement Agreement at 2.

[16]   *See id.*

Agreement" and the "Release Agreement."[17]  All three entities signed these

agreements.[18]

The Release Agreement provided, in relevant part, that:

1.    . . . .
    (d)    The terms "Claim" or "Claims" shall mean any and all claims, demands, actions, causes of action, obligations, rights and liabilities, of any nature whatsoever, and all associated damages . . . , refunds, losses, profits, costs, arbitration costs and attorneys' fees.

    (e)    The term "Released Claims" shall mean Claims . . . whether or not now known or asserted, which any Party ever had, now has, or ever will have against another Party, including without limitation Claims relating to any of the facts known to the Parties, arising out of or in any way related to . . . the Guarantee . . . .
        . . . .

2.    . . . .
    (a)    Upon the earlier of the [sic] (x) December 31, 2012 and (y) [another event], Thales hereby unconditionally and irrevocably releases and forever discharges Globalstar and Thermo from all Released Claims . . . .[19]

---

[17]    *See* FAC ¶¶ 18-19.

[18]    *See id.* ¶ 19.

[19]    6/24/12 Release Agreement ("Release Agreement"), Ex. C to Declaration of Elliot E. Polebaum in Support of Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, at 3 [Docket Nos. 16, 18].  While the Release Agreement was not attached to the Complaint, this Court may still consider it because of the explicit references to it found in both the Complaint (*see* FAC ¶ 19)

The Settlement Agreement then provided that "[o]n the New Contract Effective Date or on December 31, 2012, whichever is earlier, Thermo shall pay to Thales $12,500,000 in relation to the DSRA, by wire transfer . . . ."[20]  The Settlement Agreement also contained New York choice-of-law and forum-selection provisions.[21]

### C.    The Instant Action

According to the Complaint, "Thermo failed to pay Thales $12.5 million by December 31, 2012."[22]  On January 31, 2013, Thales filed suit in this Court against Thermo to collect the funds allegedly due under the Settlement Agreement.[23]  In response, Thermo moved to dismiss for failure to state a claim

---

and the Settlement Agreement (which was attached to the Complaint) (*see* Settlement Agreement at 2-5) or because these documents "rel[y] heavily upon its terms and effect."  *See, e.g.*, *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).

[20]    *See* Settlement Agreement at 3.  The "New Contract Effective Date" refers to the date that a new contract for the purchase of satellites would become effective (an event that did not occur before December 31, 2012).  *See id.* at 2-3; FAC ¶ 22.

[21]    *See* Settlement Agreement at 5.

[22]    FAC ¶ 26.

[23]    *See* Complaint.

and lack of personal jurisdiction.[24]  Thermo argues that its promises in the

Settlement Agreement are unenforceable due to lack of consideration.[25]  Thermo

claims that this is because the statements regarding the DSRA in the Settlement

Agreement were mere reiterations of a preexisting promise to pay under the 2009

Reimbursement Agreement (and thus cannot be consideration from Thermo under

the "preexisting duty rule"),[26] and Thermo received no consideration at all from

Thales.[27]

## III.   LEGAL STANDARD

### A.     Failure to State a Claim

A pleading must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."[28]  "Such a statement must . . . 'give

the defendant fair notice of what the plaintiff's claim is and the grounds upon

---

[24]     *See* Motion to Dismiss Plaintiff's Complaint.

[25]     *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 2.

[26]     *See id.* at 2, 5-8.

[27]     *See id.* at 2, 5, 7-8.

[28]     Fed. R. Civ. P. 8(a)(2).

which it rests.'"[29]  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[30]  The court then "determine[s] whether [those allegations] plausibly give rise to an entitlement for relief."[31]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[33]  However, the court may also

---

[29]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007)).

[30]     *Simms v. City of New York*, 480 Fed. App'x 627, 629 (2d Cir. 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[31]     *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[32]     *Iqbal*, 556 U.S. at 678.

[33]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[34]

## B.   Personal Jurisdiction

The "plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant."[35]  When the issue "is decided initially on the pleadings and without discovery, the plaintiff need only show a prima facie case."[36]  A court may consider materials outside the pleadings,[37] but must credit a

---

[34]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[35]      *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

[36]      *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction." (alteration in original) (internal quotation marks omitted)).

[37]      *See In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 566 (S.D.N.Y. 2012).

plaintiff's averments of jurisdictional facts as true.[38]  "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[39]  Nonetheless, where a defendant "'rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted.'"[40]

## IV.   APPLICABLE LAW

### A.   Claims for Breach of Contract

In a breach of contract case, a plaintiff must plead "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4)

---

[38]     *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[39]     *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

[40]     *Recurrent Capital Bridge I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012) (quoting *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002)).

damages to the plaintiff caused by that defendant's breach."[41]  The first of these elements — the existence of a contract — is in part determined by the presence or absence of consideration.[42]

### 1.    Consideration

In New York, "consideration is a necessary ingredient for an enforceable contract."[43]  Thus, unless consideration is otherwise unnecessary,[44] the promisee (or some other person) must give consideration to the promisor (or some other person).[45]  "[A] promise to perform an existing legal or contractual obligation is, without more, insufficient consideration to support a new contract."[46]

---

[41]     *Diesel Props S.r.I. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

[42]     *See, e.g.*, *Roth v. Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990).

[43]     *Id.*

[44]     *See, e.g.*, N.Y. Gen. Oblig. Law § 5-1103 (eliminating the consideration requirement for written and signed modifications of preexisting contracts).

[45]     *See* 22 N.Y. Jurisprudence 2d Contracts § 64 (2013).

[46]     *International Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997).  *Accord Goncalves v. Regent Int'l Hotels, Ltd.*, 58 N.Y.2d 206, 220 (1983).

Consideration does not have to benefit the promisor; it can benefit a third party.[47]  For example (and relevant to the instant case), "the discharge of one person from liability under a debt is a sufficient consideration for the promise of another to pay."[48]

## 2.    Release of Contractual Obligations

Parties to a contract may mutually agree to cancel and rescind the contract.[49]  In addition, one party to an agreement may release another of a duty owed to the maker of the release, and thus discharge the duty upon the occurrence of any conditions provided for in the release.[50]  "The duty that is released need not

---

[47]    *See, e.g.*, *Mencher v. Weiss*, 306 N.Y. 1, 8 (1953) ("[I]t is fundamental that a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another.").  *See also* Restatement (Second) of Contracts § 71(4) & cmt. e (1981) ("It matters not from whom the consideration moves or to whom it goes.  If it is bargained for and given in exchange for the promise, the promise is not gratuitous."); 22 N.Y. Jurisprudence 2d Contracts § 64 ("[T]o constitute an adequate consideration for a promise, the benefit need not move to the promisor, as it may move to a third person.").

[48]    *County Trust Co. of N.Y. v. Mara*, 273 N.Y.S. 597, 603 (1st Dep't 1934) (citing *Hayes v. Mestaniz*, 29 N.Y.S. 1114 (Super. Ct. 1894), *aff'd*, 150 N.Y. 561 (1896)).

[49]    *See Rodgers v. Rodgers*, 235 N.Y. 408, 410 (1923).

[50]    *See* Restatement (Second) of Contracts § 284(1) (1981) ("A release is a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition.").

be matured."[51]  A release of a preexisting obligation can occur at the same time the parties enter into a new agreement, in which case the new promise is not inadequate consideration under the preexisting duty rule.[52]

### B.    Forum-Selection Clauses and Personal Jurisdiction

When forum-selection provisions are entered into "through 'freely negotiated agreements' and are not 'unreasonable or unjust,' their enforcement does not offend due process."[53]  Agreement to an enforceable forum selection clause constitutes consent to personal jurisdiction in the selected forum and

---

[51]     *Id.* cmt. a.

[52]     *See Schwartzreich v. Bauman-Basch, Inc.*, 231 N.Y. 196, 203-05 (1921) ("Where the new contract gives any new privilege or advantage to the promisee, a consideration has been recognized, though in the main it is the same contract. . . . There is no reason that we can see why the parties to a contract may not come together and agree to cancel and rescind an existing contract, making a new one in its place. We are also of the opinion that reason and authority support the conclusion that both transactions can take place at the same time.").

[53]     *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

13

constitutes minimum contacts with that forum.[54]  The Second Circuit determines

enforceability of such provisions in a four-part analysis:[55]

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so.  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.[56]

If the first three factors are met, the forum selection is presumptively enforceable,

shifting the burden to the resisting party for the fourth step.[57]  In this final step, the

resisting party may still prevail "by making a sufficiently strong showing that

'enforcement would be unreasonable or unjust, or that the clause was invalid for

such reasons as fraud or overreaching.'"[58]  Otherwise, the forum selection clause,

assuming the contract itself is valid, will be enforced by the court.

---

[54]    *See Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue.").

[55]    *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

[56]    *Id.* (citations omitted).

[57]    *See id.*

[58]    *Id.* at 383-84 (quoting *Bremen*, 407 U.S. at 15).

## V.     DISCUSSION

### A.     Thales Has Adequately Pled the Validity of the Settlement Agreement

Assuming, as this Court must, that all facts alleged in the Complaint are true,[59] Thales has sufficiently stated a breach-of-contract claim for which relief may be granted.  In its motion, Thermo only contests the first element of a breach of contract claim — the existence of a valid contract — by arguing lack of consideration from both Thermo and Thales.[60]  However, the Complaint and the text of the Settlement Agreement plausibly allege the existence of a bargained-for exchange.

### 1.     Thales Has Pled Consideration from Thermo

Because Thales released "all claims, demands, actions, causes of action, obligations, rights and liabilities" it might have against Thermo under the Reimbursement Agreement,[61] Thermo's promise to pay $12.5 million in relation to the DSRA was not a preexisting duty under the Reimbursement Agreement.  By its

---

[59]     *See Iqbal*, 556 U.S. at 679.

[60]     *See* Def. Mem. at 5.

[61]     *See* Release Agreement at 3.

express terms, the Release Agreement releases claims arising from the Reimbursement Agreement.[62]

The text of the Settlement Agreement reveals that the parties intended to cancel their previous obligations and create a new agreement on the same subject, which the law permits them to do.[63]  The very first paragraph states that the Agreement "is intended by Thales, Globalstar and Thermo . . . to settle and extinguish the obligations, disputes and differences hereinafter described."[64]  When viewed alongside the Release Agreement, this more than suffices to plausibly allege the existence and validity of Thermo's promise under the Settlement Agreement.

To state a claim for which relief may be granted, Thales does not have to counter every possible defense that Thermo could eventually raise.  Because

---

[62]     *See id.*

[63]     *See Schwartzreich*, 231 N.Y. at 203-05.

[64]     Settlement Agreement at 1.

Thales has sufficiently pled each of the elements of a breach of contract,[65] it is premature to decide whether Thermo's promise was a preexisting duty.

### 2.    Thales Has Pled That It Provided Consideration for the Agreement

The text of the Settlement Agreement also expresses consideration from Thales in exchange for Thermo's promises.  As mentioned earlier, the purpose of the Settlement Agreement was "to settle and extinguish the obligations, disputes and differences" between Thales, Globalstar, and Thermo.[66]  As the Complaint alleges, this was done in the aftermath of an arbitral award against Globalstar of over €52 million, and it was this award that caused the settlement discussions among the parties and the ultimate signing of the Settlement and Release Agreements.[67]

---

[65]    *See Diesel Props*, 631 F.3d at 52; FAC ¶¶ 19-20 (alleging that Thales and Thermo signed the Settlement Agreement and that Thermo agreed under it to pay Thales $12.5 million); *id.* ¶ 19 (alleging that Thales signed the Release Agreement); *id.* ¶¶ 26, 32 (alleging Thermo's breach by its failure to pay the $12.5 million); *id.* ¶¶ 32-33 (alleging damage to Thales as a result of Thermo's breach).

[66]    *See* Settlement Agreement at 1.

[67]    *See* FAC ¶¶ 17-19.

Consideration does not have to flow directly to the promisor; it may flow to a third party instead.[68]  In this case, the Complaint and the Settlement Agreement clearly pled the existence of bargained-for consideration, which if not flowing directly to Thermo was instead going to benefit Globalstar.[69]  The first page of the Settlement Agreement states that it "is intended by Thales, Globalstar, and Thermo . . . to settle and extinguish [their] obligations, disputes and differences."[70]  The Agreement states that it is made "for and in consideration of the mutual covenants and undertakings herein set forth, and in the Release Agreement,"[71] which released Globalstar from roughly two-thirds of the total arbitral award against it.[72]  Again, drawing all inferences in favor of Thales, the Complaint sufficiently pleads the validity of the contract, which suggests the presence of bargained-for consideration.

---

[68]     *See, e.g.*, *Mencher v. Weiss*, 306 N.Y. 1, 8 (1953).

[69]     *See* FAC ¶¶ 17-19 (describing how the arbitral award led to the settlement talks among Thales, Thermo, and Globalstar, which in turn resulted in the signing of the Settlement and Release Agreements).

[70]     Settlement Agreement at 1.

[71]     *Id.* at 3.

[72]     *See* Release Agreement at 3.

**B.     Thales Has Made a Prima Facie Showing That This Court Has Personal Jurisdiction over Thermo**

As discussed above, Thales has plausibly alleged the existence and validity of the Settlement Agreement. That Agreement contains a New York forum-selection clause, stating that "[a]ny dispute under this Agreement or any action brought to enforce the terms of this Agreement shall be brought only in a court of competent jurisdiction in New York."[73] The Agreement further provides that "[t]he Parties specifically consent to jurisdiction in New York for purposes of enforcing the terms of this Agreement."[74]

Turning to the factors under *Phillips v. Audio Active Ltd.*,[75] this Court must enforce the Settlement Agreement's forum-selection provision. *First*, the provision (along with the jurisdictional consent) was communicated to Thermo when it signed the Settlement Agreement.[76] *Second*, the clause had mandatory

---

[73]     Settlement Agreement at 5.

[74]     *Id.*

[75]     494 F.3d at 383-84.

[76]     *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (holding that a party sufficiently consented to jurisdiction by signing an agreement containing forum-selection and jurisdictional-consent clauses).

effect ("[a]ny dispute . . . *shall* be brought . . . .").[77]  *Third*, the claims and parties

involved in the suit are subject to the forum selection clause — Thermo and Thales

are both parties to the Settlement Agreement, and Thales is alleging a breach of

that agreement by Thermo.  *Fourth*, Thermo has failed to make "a sufficiently

strong showing," or any showing, "that 'enforcement would be unreasonable or

unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"[78]

Additionally, the courts of England, where Thermo insists that this

action must be brought,[79] have no interest in this case.  As mentioned earlier, all of

Thermo's obligations under the original Reimbursement Agreement, which

contained an English forum-selection clause, have been eliminated by the Release

Agreement[80] — the only remaining agreement regarding the alleged $12.5 million

obligation is the Settlement Agreement.  Because Thermo consented to the

exclusive jurisdiction of courts in New York for disputes arising out of the

Settlement Agreement, which is the agreement under which Thales is asserting its

claim for relief, Thales has made a prima facie showing of this Court's personal

jurisdiction over Thermo.

---

[77]    Settlement Agreement at 5 (emphasis added).

[78]    *Phillips*, 494 F.3d at 384 (quoting *Bremen*, 407 U.S. at 15).

[79]    *See* Def. Mem. at 2.

[80]    *See* Release Agreement at 3.

## VI.   CONCLUSION

For the reasons set forth above, Thermo's motion to dismiss under Rules 12(b)(2) and 12(b)(6) is denied.  The Clerk of the Court is directed to close this motion (Docket No. 12).  A teleconference is scheduled for June 27, 2013 at 3:30 PM.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 25, 2013

21

**- Appearances -**

**For Plaintiff:**

Elliot E. Polebaum, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
elliot.polebaum@friedfrank.com

**For Defendant:**

Gerald S. Greenberg, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 357-2838
greenberg@taftlaw.com