UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/13

---------------------------------------------------------------- X

THALES ALENIA SPACE FRANCE,

                    Plaintiff,

     -against-

THERMO FUNDING COMPANY, LLC,

                    Defendant.

**OPINION AND ORDER**

**13 Civ. 712 (SAS)**

---------------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

In this action for an alleged breach of contract, defendant Thermo

Funding Company, LLC ("Thermo") challenges this Court's subject-matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Plaintiff Thales

Alenia Space France ("Thales"), a French company, claims diversity of citizenship

because the action is between a citizen of a State (Thermo) and a citizen of a

foreign state (Thales).  Thermo claims that it too is a citizen of a foreign state, and

thus diversity of citizenship is lacking.

As a limited liability company, Thermo takes the citizenship of its

members.  The sole membership interest in Thermo is held by a trust.  While the

1

sole trustee is a citizen of Colorado, one of the trust's beneficiaries is domiciled in Australia.[1] The question is whether Thermo's citizenship is determined by the citizenship of the trust's beneficiaries, or solely by that of its trustees.

Because the trust here is a traditional, testamentary trust — not a business or statutory trust[2] — only the *trustees'* citizenships are considered for diversity purposes. As such, complete diversity of citizenship exists and this Court has subject-matter jurisdiction over this action.

## II.   FACTUAL BACKGROUND

Thales is a French aerospace company involved in the manufacture of satellites,[3] while Thermo is a private equity firm organized as a Colorado limited liability company (LLC).[4] This case arises from a series of contracts stemming

---

[1]    While both parties agree on her citizenship, Thales argues that the grantor's sister is not in fact a trust beneficiary. This argument, while ultimately irrelevant to this decision, is unfounded. A beneficiary is merely any person to whom "the trust document directs the trustee to distribute income and principal." Amy Morris Hess et al., *Bogert's Trusts and Trustees* ("*Bogert's Trusts*") § 1 (2013). *See also* Colo. Rev. Stat. § 15-10-201(5) (2013) ("'Beneficiary', as it relates to a trust beneficiary, includes a person who has any present or future interest, vested or contingent . . . .").

[2]    "Business" or "statutory" trusts are more akin to unincorporated associations than traditional trusts. *See infra* Part IV.C.

[3]    *See* First Amended Complaint ("FAC") ¶ 3; Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Def. Mem.") at 1.

[4]    *See* FAC ¶ 4; Def. Mem. at 1–2.

2

from Thermo's controlling ownership interest in Globalstar, Inc., a provider of

satellite voice and data services that contracted with Thales to purchase a fleet of

satellites.[5] The amount in controversy exceeds $75,000.[6] For a full description of

the contractual relations between the parties which gave rise to this action, see this

Court's Opinion and Order dated June 25, 2013.[7]

### A.     Thermo and the James Monroe Revocable Trust

The sole membership interest in Thermo is held in the James Monroe

Revocable Trust ("the Trust").[8] The Trust was created in 1997 and is currently

governed by a "First Restatement of Declaration and Agreement of Trust" dated

---

[5]     *See* FAC ¶¶ 4, 8.

[6]     *See id.* at 7 (claiming that "Thermo breached the Settlement
Agreement by failing to pay Thales $12,500,000" and demanding damages in the
same amount).

[7]     *See Thales Alenia Space France v. Thermo Funding Co.*, No. 13 Civ.
712, 2013 WL 3199628, at *1–2 (S.D.N.Y. June 25, 2013).

[8]     *See* 7/17/13 Transcript of Deposition of James Monroe, III ("Thermo
Excerpts of Monroe Dep."), Ex. B to Declaration of Gerald S. Greenberg, Counsel
for Thermo, in Support of Defendant's Motion to Dismiss Plaintiff's First
Amended Complaint ("Greenberg Decl."), at 86 ("Q.  So the sole member of
Thermo Funding Company, LLC, is this trust?  A.  That's my understanding,
yes."); Def. Mem. at 2; Plaintiff's Memorandum of Law in Opposition to Motion
to Dismiss Plaintiff's First Amended Complaint for Lack of Subject Matter
Jurisdiction ("Opp. Mem.") at 9.

August 10 of that year.[9]  The grantor of the trust is also its current sole trustee,

James Monroe, III.[10]

      The Trust is an inter vivos trust established under Colorado law[11] — it

is not a business or statutory trust registered as a business entity.[12]  The grantor —

Monroe — reserves the right to "amend, modify or revoke" the Trust at any time.[13]

He is also entitled to all income derived from trust assets, as well as any part of the

principal of the Trust, subject to his discretion.[14]  In short, Monroe has absolute

---

     [9]     *See* 9/10/97 First Restatement of Declaration and Agreement of Trust ("Trust Agreement"), Ex. A to Greenberg Decl., at 1.

     [10]     *See id.* at 1–2, 42; Thermo Excerpts of Monroe Dep. at 86 ("Q.  Who is the grantor of the James Monroe Revocable Trust?  A.  I am, James Monroe, III. Q.  Who is the trustee?  A.  James Monroe, III, as trustee."); Def. Mem. at 2–3; Opp. Mem. at 5.

     [11]     *See* Trust Agreement at 2, 37.  More specifically, the validity of the trust is "governed by the laws of the state in which the Grantor is domiciled," *id.* at 37, in this case, Colorado.

     [12]     *See* 7/17/13 Transcript of Deposition of James Monroe, III ("Thales Excerpts of Monroe Dep."), Ex. B to Declaration of Elliot E. Polebaum, Counsel for Thales, in Support of Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Polebaum Decl."), at 87 ("[I]t's an estate planning succession trust."). *See also* 7/26/13 Transcript of Telephone Conference, Ex. F to Polebaum Decl., at 3 ("MR. GREENBERG: . . . [I]t is not a Massachusetts business trust, anything like that.").  For more on the nature of the James Monroe Revocable Trust, see *infra* Part V.A.

     [13]     Trust Agreement at 3.

     [14]     *See id.* at 4.

4

discretion during his lifetime as to the existence of the Trust and the disposition of trust assets.

Upon Monroe's death, the income from the Trust shifts to his wife, and the trustee is empowered to distribute amounts from the principal to her at its discretion.[15] Upon the death of Monroe's wife, or upon Monroe's death if he survives her, the trust distributes set amounts to several named beneficiaries.[16] After this, the residual goes to either a limited partnership or an additional trust established for the benefit of Monroe's children.[17]

## B.   Citizenships of the Trustee and Beneficiaries

Both parties agree that Monroe is a citizen of Colorado.[18] Thus, if Monroe's citizenship is all that can be ascribed to Thermo, diversity of citizenship is not in dispute.  However, one of the named beneficiaries in the Trust Agreement

---

[15]     *See id.* at 7.

[16]     *See id.* at 7–9.

[17]     *See id.* at 10; Thermo Excerpts of Monroe Dep. at 140–141 (describing Thermo Investments Limited Partnership and the "Irrevocable Trust").

[18]     *See* Def. Mem. at 4 ("The Trust's current Trustee, Mr. Monroe, is a citizen of the United States of America and is domiciled in the State of Colorado."); Opp. Mem. at 2 ("Mr. Monroe['s] . . . Colorado citizenship means that complete diversity exists between the parties.").  "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

is Vicky Monroe Harris, Monroe's sister.[19]  Harris is a citizen of the United States,

the United Kingdom, and Australia, and is domiciled in Australia.[20]  If Thermo's

citizenship is determined by that of Harris, then this Court lacks subject-matter

jurisdiction.[21]  Thus, the sole question is whether Thermo's citizenship is

determined by reference to the Trust's beneficiaries, or solely by the citizenship of

its trustee.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a

claim when a federal court lacks subject matter jurisdiction.  The proponent of

jurisdiction (typically the plaintiff) bears the burden of establishing subject matter

jurisdiction by a preponderance of the evidence.[22]

In considering a motion to dismiss for lack of subject matter

jurisdiction, "'the court must take all facts alleged in the complaint as true and

---

[19]     *See* Trust Agreement at 8.

[20]     *See* Def. Mem. at 4; 7/16/13 Transcript of Deposition of Victoria
Harris ("Harris Dep."), Ex. C to Greenberg Decl., at 13, 34, 40–41.

[21]     *See infra* Part IV.A.

[22]     *See Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002).  *See also
Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) ("[T]he
burden of demonstrating that the court has subject matter jurisdiction over the case
falls on the plaintiff as it is the plaintiff who seeks to invoke the court's
jurisdiction.").

6

draw all reasonable inferences in favor of plaintiff.'"[23]  However, "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"[24]  In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[25]  "In deciding the motion, the court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits.'"[26]

## IV.   APPLICABLE LAW

### A.   Diversity Jurisdiction and Alienage

District courts can exercise subject-matter jurisdiction over actions containing only state law claims where the amount in controversy exceeds $75,000

---

[23]     *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

[24]     *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  *Accord London v. Polishbook*, 189 F.3d 196, 199 (2d Cir. 1999) ("[I]t is the affirmative burden of the party invoking [subject-matter] jurisdiction . . . to proffer the necessary factual predicate — not simply an allegation in a complaint — to support jurisdiction." (citations omitted)).

[25]     *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

[26]     *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 580 (S.D.N.Y. 2010) (alteration in original) (quoting *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

and the opposing parties are "citizens of a State and citizens or subjects of a

foreign state."[27]  This is commonly known as "alienage diversity."[28]

Federal jurisdiction may not be asserted on the basis of diversity

unless "the citizenship of each plaintiff is diverse from the citizenship of each

defendant."[29]  For alienage diversity, this means that "[t]he presence of aliens on

two sides of a case destroys diversity jurisdiction."[30]  Additionally, United States

citizens domiciled abroad are treated as neither citizens of a foreign state nor

citizens of a particular U.S. state, and will therefore destroy diversity jurisdiction in

any case to which they are a party.[31]

### B.   *Carden* and Diversity for Unincorporated Associations

[27]     28 U.S.C. § 1332(a)(2) (2006).

[28]     *See, e.g.*, *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 90–91 (2002); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 285 (S.D.N.Y. 2010).

[29]     *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

[30]     *Island Global Yachting, Ltd. v. Poole Capital, S.A.*, 438 F. Supp. 2d 310, 310 (S.D.N.Y. 2006).

[31]     "United States citizens 'domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state,' so that '§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties.'" *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990), *abrogated on other grounds as recognized by Kalt v. Hunter (In re Hunter)*, 66 F.3d 1002, 1005–06 (9th Cir. 1995)). This also applies for dual citizens, because in such a case, the person's "American citizenship will determine diversity." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991).

While a corporation takes the citizenship of both the state in which it is incorporated and the state where "it has its principal place of business,"[32] the same is not true for other business entities. In *Carden v. Arkoma Associates*,[33] the Supreme Court reaffirmed the longstanding rule that the citizenship of an unincorporated entity — in that case a limited partnership — derives from the citizenships of "all of the entity's members."[34] This holding applies to limited liability companies (LLCs) as well.[35]

The reasoning in *Carden* applies to a broad range of unincorporated associations and business entities.[36] For example, some federal courts have held that business trusts take the citizenship of their beneficiaries (in some cases

---

[32]   28 U.S.C. § 1332(c)(1).

[33]   494 U.S. 185 (1990).

[34]   *Id.* at 195.

[35]   *See, e.g., Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *Handelsman v. Bedford Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000).

[36]   *See, e.g., Herrick*, 251 F.3d at 322 (holding that a law firm, organized as a partnership, takes the citizenship of each of its partners); *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) ("The citizenship of an unincorporated association for diversity purposes has been determined for nearly 100 years by the citizenship of each and every member of that association.").

referred to as "shareholders").[37]  However, a traditional trust — essentially a nexus of contract between the grantor and the trustee(s) — differs from a business or statutory trust in several important ways.

### C.   Distinguishing Traditional and Business Trusts

#### 1.   The Structure of Traditional Trusts

A trust is best defined as a contract or fiduciary relationship between a holder of property (called the grantor, settlor, or trustor) and one or more trustees.[38] The settlor transfers legal title to the trust property (also known as the res) to the trustees,[39] who then carry out the manifested "intention[s] of the settlor"[40] and

---

[37]   *See, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002) (holding that Massachusetts business trusts take the citizenship of each of their beneficiaries/shareholders), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006).  There is still debate in the federal courts over whether such business trusts act as unincorporated associations or whether all trusts should take the citizenship of their trustees.  *Compare Riley*, 292 F.3d at 1338–39 (classifying business trusts as unincorporated associations), *with Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees.").

[38]   "A trust . . . is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of . . . one or more persons, at least one of whom is not the sole trustee." *Restatement (Third) of Trusts* § 2 (2003).  *See also Black's Law Dictionary* 1647 (9th ed. 2009) (defining a trust as "a property interest held by one person (the *trustee*) at the request of another (the *settlor*) for the benefit of a third party (the *beneficiary*)").

[39]   *See, e.g., Starr Int'l Co. v. AIG*, 648 F. Supp. 2d 546, 559 (S.D.N.Y. 2009) (holding that under New York law, a valid trust requires "'the delivery of the

maintain, use, or distribute the property to benefit the beneficiaries of the trust.[41]

This form, commonly used for gift or estate-planning purposes, is what I will call a

traditional trust.

A traditional trust may be created in several ways — three of which

follow:

> (a) a transfer by the will of a property owner to another person as trustee for one or more persons; or
> (b) a transfer inter vivos by a property owner to another person as trustee for one or more persons; or
> (c) a declaration by an owner of property that he or she holds that property as trustee for one or more persons . . . .[42]

The first of these is known as a "testamentary trust" while the latter two are known

as "inter vivos trust[s]."[43]

## 2.    Business and Statutory Trusts

---

res by the settlor to the trustee with the intent of vesting legal title in the trustee'" (quoting *Agudas Chasidei Chabad of United States v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987))).

[40]    *Restatement (Third) of Trusts* § 4.

[41]    In this capacity, the trustee "has, except as limited by statute or the terms of the trust, . . . all of the powers over trust property that a legally competent, unmarried individual has with respect to individually owned property," *Restatement (Third) of Trusts* § 85, and can "hold, manage, and dispose of [trust] assets for the benefit of [the beneficiaries]." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980).

[42]    *Restatement (Third) of Trusts* § 10.

[43]    *See Black's Law Dictionary* 1651, 1654.

11

While the term "trust" typically refers to the traditional gift and estate planning trusts described above, the term has also been used to describe another legal form: the business or statutory trust.

> "[I]n general the term 'business trust' has been used 'to denote an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares.'"[44]

Business trusts are more akin to business entities — such as limited partnerships, LLCs, or even corporations — than to the traditional trusts described above.[45] In

---

[44]   Myron Kove et al., *Bogert's Trusts* § 247 (quoting Comment, *Massachusetts Trusts*, 37 Yale L.J. 1103, 1105 (1928)).

[45]   *See, e.g., Carey v. U.S. Indus., Inc.*, 414 F. Supp. 794, 795 (N.D. Ill. 1976) ("The object of an ordinary trust is to hold and conserve a particular res, while a business trust is simply a convenient medium for conducting business and sharing profits. In fact, the business trust closely resembles a corporation in its centralized control, limited liability, profit motivation, and free transfer of the beneficial interest." (citations omitted)). *See also Riley*, 292 F.3d at 1338 ("*Carden* made clear that the incorporated/unincorporated distinction applies specifically to Massachusetts business trusts, requiring their citizenship to be determined on the basis of the citizenship of their shareholders."); *Bogert's Trusts* § 247 ("For many years the trust had been used in Massachusetts as a form of business organization, a substitute for incorporation . . . ."); 13 *American Jurisprudence 2d* Business Trusts § 1 (2013) ("One of the distinctive devices by means of which individuals may combine their resources to operate a business for profit is the so-called business trust or 'Massachusetts trust,' which may be comprehensively defined as an unincorporated business organization . . . .").

12

fact, Colorado law excludes business trusts from the definition of trusts within that

state's probate code.[46]

A leading treatise on trusts notes the key distinction between the two

forms as follows:

> The most significant characteristic of the business trust, and the
> most important distinction between such trusts and ordinary
> trusts established by will or inter vivo, lies in the fact that the
> business trust is organized not as a means of effecting a gift or
> transfer but as a device for profit making through the
> combination of capital contributed by a number of investors.[47]

Other distinctions between the two types of trusts include whether the trust was

"established to run a business enterprise,"[48] as well as the power of "the

beneficiaries to elect and remove trustees,"[49] and "to control the trustees in the

---

[46]   *See* Colo. Rev. Stat. § 15-10-201(56)(b)(I) ("'Trust' also excludes . . .
business trusts, as defined in subsection (6.5) of this section . . . .").

[47]   *Bogert's Trusts* § 247.  In accordance with this view, the Second
Circuit noted that "many courts have found the presence or absence of a profit
motive influential in their determination of whether the trust at issue was a
business trust.  As most corporations are established to generate a profit, we too
find this factor relevant to our determination of whether the Trust is a business
trust." *In re Secured Equip. Trust of E. Airlines, Inc.*, 38 F.3d 86, 90 (2d Cir.
1994).  However, the court also noted that even if "not specifically established to
generate a profit," other factors could still lead to a trust being classified as a
business trust. *Id.*

[48]   *Secured Equip. Trust*, 38 F.3d at 90.

[49]   *Bogert's Trusts* § 247. *See also Navarro*, 446 U.S. at 472 (Blackmun,
J., dissenting) ("It appears to me that the powers lodged in the beneficial
shareholders of Fidelity — the powers to elect and remove trustees, to vote on

conduct of the business."[50]   Some states also require business trusts to file certain

registration documents that differentiate them from traditional trusts.[51]

Colorado law, though not dispositive on this Court's classification of

Monroe's trust for diversity purposes, is also revealing here:

> "Business trust" includes, but is not limited to, Massachusetts
> business trusts created for business or investment purposes;
> Delaware statutory trusts; Illinois land trusts; mutual fund
> trusts; common trust funds; voting trusts; liquidation trusts; real
> estate investment trusts; environmental remediation trusts;
> trusts for the primary purpose of paying debts, dividends,
> interest, salaries, wages, compensation, annuities, profits,
> pensions, or employee benefits of any kind; and other trusts
> with purposes that are the same or similar to any of the trusts
> enumerated in this subsection (6.5), regardless of whether such
> other trusts are created under statutory or common law, and

---

major trust investments, to amend the terms of the trust, and to terminate it —
clearly dictate that it falls on the partnership side of the line."). However, in
*Navarro*, the majority did not contest that these factors indicate a trust is a business
trust (the trust there was, in fact, a Massachusetts business trust), but rather held
that where a trustee "possesses certain customary powers to hold, manage, and
dispose of assets for the benefit of others," she is a real party to a controversy and
may sue in her own name. *Id.* at 464–65 (majority opinion).

[50]     *Bogert's Trusts* § 247.  *See also Navarro*, 446 U.S. at 472 (Blackmun,
J., dissenting).

[51]     *See Olympic Coast Inv., Inc. v. Seipel*, 208 Fed. App'x 569, 570 (9th
Cir. 2006) (noting lack of filing with the Washington Secretary of State as
evidence that a business trust did not exist). *See also, e.g.*, Mass. Gen. Laws ch.
182, § 2 (2013) ("The trustees of an association or trust shall file a copy of the
written instrument or declaration of trust creating it with the secretary and with the
clerk of every city or town where such association or trust has a usual place of
business.").

regardless of whether the beneficial interests in such other trusts are evidenced by certificates.[52]

## D.    Current Case Law on the Citizenship of Trusts

The Second Circuit has not yet decided how to determine the citizenship of a trust, and the other Courts of Appeals are divided.[53] As the Third Circuit noted in *Emerald Investors Trust v. Gaunt Parssipany Partners*, there were two predominant approaches in the case law before that case was decided: (1) looking solely to the citizenships of the trustees and (2) looking solely to the citizenships of the beneficiaries.[54] Courts have taken these approaches by interpreting *Carden* and an earlier Supreme Court decision, *Navarro Savings Association v. Lee*.[55] *Carden*, as discussed earlier, held that unincorporated business entities take the citizenships of each of their members.[56] In *Navarro*, the Court held that when a trust has "active trustees whose control over the assets held in their names is real and

---

[52]    Colo. Rev. Stat. § 15-10-201(6.5).

[53]    *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 201–05 (3d Cir. 2007) (describing the various answers to this question adopted by the Courts of Appeals); *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 226 (S.D.N.Y. 2013) (noting that "the Second Circuit has not spoken on [this] question").

[54]    *See* 492 F.3d at 201–02.

[55]    446 U.S. 458 (1980).

[56]    *See* 494 U.S. at 195.

15

substantial," those trustees "are real parties to the controversy" and may "sue in their own right, without regard to the citizenship of the trust beneficiaries."[57]

The holding in *Navarro* is in line with the Supreme Court's treatment of trusts prior to the advent and popularization of the business trust.  For example, in *Bullard v. City of Cisco*, the Court held that when an agreement vested trustees with full legal title to the trust property, the trustees were entitled to bring suit in federal court "by reason of their citizenship[s]" alone.[58]  "The beneficiaries were not necessary parties and their citizenship was immaterial."[59]

The Second Circuit has noted in dicta that *Navarro* "deemed the citizenship of the trustees to be determinative."[60]  Similarly, the Seventh

---

[57]     446 U.S at 465.

[58]     290 U.S. 179, 190 (1933).

[59]     *Id.*

[60]     *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998) (citing *Navarro*, 446 U.S. at 465–66).  While this opinion did not distinguish between traditional and business trusts, it is likely that this statement was directed toward traditional trusts — the form most commonly thought of when using the word "trust."

16

and Ninth Circuits have cited *Navarro* as standing for the proposition that "[t]he citizenship of a trust is that of the trustee."[61]

By contrast, in *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the Eleventh Circuit held that a Massachusetts business trust is "deemed, for diversity purposes, a citizen of each state in which it has at least one shareholder."[62] However, the holding of *Riley* was limited to business trusts and similar entities.[63]

In *Emerald Investors*, the Third Circuit decided on a third path: using the citizenships of both the trustees and the beneficiaries.[64] But the *Emerald Investors* court declined to consider the characteristics of the trust at issue, noting that its "research . . . has not led [it] to conclude that the type of trust calls for a difference in treatment when determining a trust's

---

[61]    *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006). *Accord Johnson*, 437 F.3d at 899 ("A trust has the citizenship of its trustee or trustees.").

[62]    292 F.3d at 1337.

[63]    *See id.* at 1338–39 (framing the discussion as specific to Massachusetts business trusts, and also drawing comparison to entities "which appear to be voluntary unincorporated associations" rather than traditional trusts).

[64]    *See* 492 F.3d at 203 ("The final alternative is to look to the citizenship of both the trustee and the beneficiary in all cases in which a trust is a party. We consider that approach to be best for several reasons.").

17

citizenship for diversity of citizenship jurisdictional purposes."[65]  While the

court believed that the trust there may have been a business trust, it

"reach[ed] no conclusion on that point."[66]

   One judge of this Court recently accepted the reasoning of

*Emerald Investors* in *Mills 2011 LLC v. Synovus Bank* and "adopt[ed] the

'dual trustee-beneficiary approach.'"[67]  In that case, the trust was a Delaware

statutory trust.[68]  While the court did not explicitly limit its holding to

business trusts, it did make reference to the "'member[s], beneficiar[ies], or

shareholder[s]'" of business trusts.[69]  In another recent opinion, a different

judge of this Court held that "a court must look, at least in part, to the

citizenship of the trust's trustee or trustees."[70]  The court also noted that

"[w]hile the citizenship of a trust may also depend on the citizenship of the

---

[65]    *Id.* at 198 n.10.

[66]    *Id.*

[67]    921 F. Supp. 2d at 226.

[68]    *See* Plaintiff's Memorandum of Law in Opposition to Motion to
Dismiss at 2, *Mills*, 921 F. Supp. 2d 219 (No. 12 Civ. 6158), 2012 WL 5272374
("The Trust is a Delaware statutory business trust.").  Delaware statutory trusts
meet this Court's definition of a business trust.  *See supra* Part IV.C.2.

[69]    *Mills*, 921 F. Supp. 2d at 227.  *See also id.* at 222–23 (discussing
*Carden* as referring to a business trust)

[70]    *Quantlab Fin., LLC v. Tower Research Capital, LLC*, 715 F. Supp. 2d
542, 547 (S.D.N.Y. 2010).

trust's beneficiary or beneficiaries," the case did "not present an occasion to address this issue."[71]

## V.   DISCUSSION

### A.   The James Monroe Revocable Trust Is a Traditional Trust, Not a Business Trust

The Monroe Revocable Trust is a traditional trust because it was established for estate-planning purposes.[72]  It also fits the Restatement definition of "a declaration by an owner of property that he or she holds that property as trustee for one or more persons."[73]

---

[71]   *Id.* at 547 n.2.

[72]   Q.  So is the general purpose of this trust to -- to benefit your family?
A.  It was -- yeah, I said it's an estate planning succession trust.
Q.  So you wanted to provide for your family after your death?
A.  Correct.  And under other circumstances like not quite dead, but limping along.
Q.  Did you enter into this trust for tax purposes as well?
A.  No, I don't think so.
Q.  So –
A.  It's for estate planning.
Q.  So to benefit your family where you're incapacitated or after your passing?
A.  That's the primary purpose, yes.

Thales Excerpts of Monroe Dep. at 87.

[73]   *Restatement (Third) of Trusts* § 10.

Furthermore, the Trust does not fit the definition of a business trust.  It
is not "'an unincorporated organization created for profit under a written
instrument or declaration of trust, the management to be conducted by
compensated trustees for the benefit of persons whose legal interests are
represented by transferable certificates of participation, or shares.'"[74]  It was not
"established to run a business enterprise."[75]  The beneficiaries have no power to
"elect and remove [the] trustees,"[76] nor do they have any ability to control the
conduct of the trustees.[77]  Additionally, there is no requirement to register the Trust
under Colorado law.[78]

For all of these reasons, the Monroe Revocable Trust is properly
categorized as a traditional trust.  As such, insofar as there is any difference in the

---

[74]     *Bogert's Trusts* § 247 (quoting *Massachusetts Trusts, supra* note 44, at 1105).

[75]     *Secured Equip. Trust*, 38 F.3d at 90.  Holding ownership interests in various businesses is not the same as running a specific business enterprise.  The holding of various assets in trust — including such ownership interests — is the *raison d'être* of traditional trusts.

[76]     *Bogert's Trusts* § 247.

[77]     *See id.*

[78]     *See* Colo. Rev. Stat. § 15-16-101(3) ("Registration of a fully and presently revocable inter vivos trust shall not be required until such time as the grantor's power to revoke such trust has terminated . . . .").

treatment of traditional and business trusts for diversity purposes, the law governing the citizenship of traditional trusts is controlling.

## B.   Traditional Trusts Take the Citizenship of Their Trustees

A traditional trust is not a business entity or unincorporated association covered by *Carden*, and the rules governing the citizenships of business associations do not apply to traditional trusts.  Unlike a business trust — which typically has a legal personality, conducts business in its own right, can sue or be sued, and generally operates like an unincorporated business entity — a traditional trust is primarily an estate-planning tool.  Calling the beneficiaries of a traditional trust its "members" extends *Carden* and its progeny well beyond associations and similar entities.

There is ample Supreme Court precedent holding that for traditional trusts, the trustee is the real party to the controversy.[79]  While these cases involve

---

[79]    *See Bullard*, 290 U.S. at 190 ("As the transfers . . . were made to them as trustees, were real and not simply for purposes of collection, and invested them with the full title[,] they were entitled, by reason of their citizenship and of the amount involved, to bring the suit in the federal court.  The beneficiaries were not necessary parties and their citizenship was immaterial."); *Knapp v. Western Vt. R.R. Co.*, 87 U.S. (20 Wall.) 117, 123 (1873) ("[Trustees] are the real plaintiffs in any suit brought to enforce a claim accruing to them in the execution of their trust, as much so as executors and administrators are, who also sue for the benefit of others and not themselves."); *Coal Co. v. Blatchford*, 78 U.S. (11 Wall.) 172, 175 (1870) ("Executors and trustees suing for others' benefit form no exception to this rule. If they are personally qualified by their citizenship to bring suit in the Federal courts, the jurisdiction is not defeated by the fact that the parties whom they represent may be disqualified.").

the capacity of a trust to sue or be sued, or whether a trust is a proper or required

party, their reasoning suggests that the trustee should determine the citizenship of a

business entity whose membership interest is held in the res of a traditional trust.

Any other holding would be inconsistent with the cases holding that, because a

traditional trust cannot sue or be sued,[80] the citizenship of the trustees determines

citizenship for the purpose of establishing diversity.

Furthermore, it makes little sense to define the citizenship of a trust by

reference to the beneficiaries when those beneficiaries may not even know the trust

exists.[81] Here, it appears that Vicky Harris did not know of the Trust's existence or

---

[80]    *See, e.g., First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp.*, 351 F.3d 810, 814 (8th Cir. 2003) ("Some states also now recognize the so-called 'business' or 'Massachusetts' trust. Unlike traditional trusts, this form of business organization gives the trust powers to sue and be sued in its own name." (citations omitted)). *See also* Fed. R. Civ. P. 17(b) (stating that for all parties aside from individuals and corporations, the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."); *MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12 Civ. 7322, 2013 WL 4399210, at *2 (S.D.N.Y. Aug. 15, 2013) (holding that a suit listing the trust as the plaintiff in the caption could continue only because the body of the complaint noted that the trust was acting through the trustees).

[81]    *See, e.g., Martin v. Funk*, 75 N.Y. 134, 138 (1878) ("[W]hen a trust is declared, whether in a third person or the donor, it is not essential that . . . the [beneficiary] should be informed of the trust."); *Restatement (Third) of Trusts* § 14 ("A trust can be created without notice to or acceptance by any beneficiary or trustee."); *Bogert's Trusts* § 169 ("It is generally held that notice by the settlor to the beneficiary that a trust has been created is not necessary to the completion of a trust, subject to the power of the beneficiary to reject the trust when he is informed of it.").

that she was a beneficiary of it until this litigation.[82] It would be illogical to bar

jurisdiction based on the citizenships of beneficiaries who may not even know that

the trust in question exists, when the citizenship of the trustee — "'a real party to

th[e] controversy'"[83] — would permit subject-matter jurisdiction.

Thermo cites *Emerald Investors* and other cases for the proposition

that the type of trust is irrelevant when determining citizenship for diversity

purposes,[84] and argues that this Court should adopt the rule in *Emerald Investors*

and consider the citizenship of both trustees *and* beneficiaries. The argument that

"the Trust should be treated no differently than any other unincorporated

association"[85] has some appeal in a search for simplicity. However, the distinction

between traditional and business trusts is important. The holding of *Carden* did

not alter the treatment of traditional trusts exemplified in *Bullard* and discussed in

*Navarro*. Therefore, when an unincorporated business entity is a party to a case,

---

[82]     *See* Harris Dep., Ex. C to Polebaum Decl., at 21–22. *See also* Opp. Mem. at 6 ("[Monroe] did not inform his sister of her supposed interest in the Trust until a few weeks ago, when he attempted to obtain evidence to support this Motion to Dismiss.").

[83]     *Andrews v. Modell*, 636 F. Supp. 2d 213, 220 (S.D.N.Y 2008) (alteration in original) (quoting *Navarro*, 446 U.S. at 462).

[84]     *See* Def. Mem. at 14 (citing *Emerald*, 492 F.3d at 198 n.10).

[85]     *Id.* at 15.

and an ownership interest in that entity is within the res of a traditional trust, the citizenship of the trustees controls.

Because the Monroe Revocable Trust is a traditional trust, and its sole trustee is a citizen of Colorado, Thermo is a citizen of Colorado and complete diversity of citizenship exists.

## VI.   CONCLUSION

For all of the reasons set forth above, Thermo's motion to dismiss under Rule 12(b)(1) is denied.  The Clerk of the Court is directed to close this motion (Docket No. 33).  A conference is scheduled for December 2, 2013 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 12, 2013

24

- **Appearances** -

**For Plaintiff:**

Elliot E. Polebaum, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000

Eugene N. Hansen, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7375


**For Defendant:**

Gerald S. Greenberg, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 357-2838