UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

THALES ALENIA SPACE FRANCE,

          Plaintiff,

    - against -

THERMO FUNDING COMPANY, LLC,

          Defendant.

------------------------------------------------------- X

<u>OPINION AND ORDER</u>

13-cv-712 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/14

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.  INTRODUCTION

        Plaintiff Thales Alenia Space France ("Thales") brings this diversity breach of contract suit against Thermo Funding Company, LLC ("Thermo"). Thales now moves for summary judgment. For the following reasons, Thales's motion is GRANTED.

II.  BACKGROUND

        This action arises from a series of contractual relationships among three entities. Thales is a French aerospace company involved in the manufacture of low Earth orbit ("LEO") satellites.[1] Globalstar, Inc. ("Globalstar") is a publicly

---

[1] *See* Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1") ¶¶ 1-2.

traded, commercial provider of satellite communication services that owns and operates LEO satellites.[2] Thermo is a limited liability company that has invested millions of dollars in Globalstar and, as of April 2012, owned a controlling interest in Globalstar.[3] The material facts are undisputed.

### A. The Parties' Business Relationships

In 2009, Thales and Globalstar entered into an Amended and Restated Contract for the Construction of the Globalstar Satellite for the Second Generation Constellation ("Construction Contract"), which required Thales to design and manufacture forty-eight LEO satellites.[4] In order to fund this arrangement, Globalstar arranged for financing from the Compagnie Francaise d'Assurance pour le Commerce Exterieur ("COFACE")—the French export credit agency—and several French banks.[5] As part of this agreement, Globalstar was required to fund a Debt Service Reserve Account ("DSRA") of $12.5 million, and COFACE and the banks requested Thales provide a guarantee of the full amount of the DSRA.[6] Thales agreed, provided that Thermo reimburse Thales for any payments it made

---

[2]   *See id.* ¶¶ 13-15.

[3]   *See id.* ¶¶ 16-19.

[4]   *See id.* ¶¶ 22-23.

[5]   *See id.* ¶ 24.

[6]   *See id.* ¶¶ 25-26.

under the guarantee.[7] This arrangement between Thermo and Thales was memorialized in a separate 2009 contract (the "Reimbursement Agreement"), which provided that such reimbursements must be made by December 31, 2012, or within ten business days of a change in control of Globalstar.[8] Ultimately, Thales paid the maximum $12.5 million, thereby obligating Thermo to reimburse it for the same amount.[9]

### B. The Thales-Globalstar Arbitration

In 2011, Globalstar initiated arbitral proceedings against Thales in relation to its obligations under the Construction Contract, and Thales filed counterclaims against Globalstar.[10] Thales prevailed in the arbitration, winning an approximately €52.7 million award on its counterclaims.[11] Knowing Globalstar would file for Chapter 11 bankruptcy if Thales proceeded to enforce the arbitral award, Thales agreed to enter into settlement negotiations with Globalstar, which included discussing the terms of Globalstar's purchase of six additional satellites

---

[7]   *See id.* ¶ 27.

[8]   *See id.* ¶¶ 28-29

[9]   *See id.* ¶¶ 32-33.

[10]  *See id.* ¶¶ 35, 37.

[11]  *See id.* ¶ 41.

Case 1:13-cv-00712-SAS   Document 74   Filed 08/07/14   Page 4 of 18


from Thales.[12]

### C. The Settlement Agreement and the Release Agreement[13]

As part of the settlement, Thales sought to resolve claims relating to the Construction Contract that Globalstar had threatened to bring and obtain a release from Globalstar of all potential claims relating to the Construction Contract.[14] To this end, Thales insisted that Thermo be a party to any settlement and Thermo did not object.[15] After weeks of negotiation, beginning in mid-May 2012, Thales, Thermo, and Globalstar ("Parties") reached a final agreement and signed the Settlement and Release Agreements ("Agreements") simultaneously on June 24, 2012.[16]

#### 1. The Settlement Agreement

The Settlement Agreement's introductory paragraph recites that the Parties intend it "to settle and extinguish the obligations, disputes and differences

---

[12] See id. ¶¶ 44, 46.

[13] The Settlement Agreement and Release Agreement explicitly reference each other, making it clear they were intended to be read together. See, e.g., Settlement Agreement ("Settlement"), Exhibit ("Ex.") 1 to Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem."), at 2.

[14] See Pl. 56.1 ¶¶ 47, 55.

[15] See id. ¶¶ 57, 69.

[16] See id. ¶¶ 78, 83, 85.

hereinafter described."[17] The Settlement Agreement then describes Thermo's prior obligation to pay Thales $12.5 million under the Reimbursement Agreement.[18]

The Agreement then goes on to state that "Thermo shall pay to Thales $12,500,000 in relation to the DSRA, by wire transfer" on the earlier of "the New Contract Effective Date [for the six new satellites] or on December 31, 2012."[19] In addition, Thales agreed to postpone or waive the amount it was awarded in arbitration.[20] Article 14 of the Settlement Agreement extinguishes the prior Reimbursement Agreement. The clause reads: "This Agreement constitutes the entire agreement between the Parties and supersedes all prior understandings, commitments and representations between the Parties."[21]

### 2. The Release Agreement

As part of the Release Agreement, Thales released Thermo from all present and future obligations under the Reimbursement Agreement. The Release Agreement expressly states that the "Released Claims" include "Claims, except the Excluded Claims, whether or not now known or asserted, which any Party ever

---

[17]   Settlement at 1.

[18]   *See id.* at 1.

[19]   *Id.* at § 2(a).

[20]   *See id.* at § 2(d).

[21]   *Id.* at § 14.

had, now has, or ever will have against another Party, including without limitation Claims relating to any facts known to the Parties, arising out of or in any way related to the Contract . . . except the Excluded Claims.[22] "Excluded Claims" include ". . . (ii) any Claims for amounts payable pursuant to the Settlement Agreement."[23]

### D. Procedural History

Thales expected that the New Contract Effective Date, as defined in the Settlement Agreement, would occur prior to December 31, 2012 but it did not.[24] Thermo refused to pay Thales the $12.5 million on December 31, 2012.[25] According to James Monroe, III, who executed the Agreements on behalf of Thermo, the "spirit" of the Settlement Agreement did not support payment until Globalstar first obtained financing for the six new satellites.[26] Globalstar has not yet obtained financing for the six satellites.[27]

Thales commenced this litigation on January 31, 2013. Thermo filed

---

[22]  Release Agreement ("Release"), Ex. 2 to Pl. Mem. § 1(e).

[23]  *Id.* § 1(f).

[24]  *See* Pl. 56.1 ¶ 106.

[25]  *See id.* ¶ 139.

[26]  *See id.* ¶¶ 91, 142-143.

[27]  *See id.* ¶ 144.

a motion to dismiss, claiming that no consideration supported Thermo's promise to pay Thales $12.5 million because Thermo had a "preexisting duty" to pay that sum under the Reimbursement Agreement.[28] On June 25, 2013, I rejected this argument as well as Thermo's "lack of consideration" argument because the Complaint alleged that a third party, Globalstar, received consideration from Thales.[29]

Thermo then filed a Rule 12(b)(1) motion, arguing that Thales and Thermo are both foreign and that the Court lacked diversity jurisdiction. On November 12, 2013, I found that complete diversity of citizenship exists and this Court therefore has subject matter jurisdiction.[30]

Thales now brings this motion for summary judgment. While the material facts are undisputed, the parties disagree as to whether the documents were structured such that the $12.5 million DSRA payment owed by Thermo under the Reimbursement Agreement would continue, or whether the Parties intended that the Settlement Agreement would supersede and extinguish the prior Reimbursement Agreement. Thermo argues that the 2012 Settlement Agreement

---

[28]   Pl. Mem. at 10.

[29]   *Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459 (S.D.N.Y. 2013).

[30]   *See Thales Alenia Space France v. Thermo Funding Co., LLC*, No. 13 Civ. 712, 2013 WL 5996148, at *1 (S.D.N.Y. Nov. 12, 2013).

merely reiterated a preexisting contractual duty to pay under the 2009 Reimbursement Agreement. Accordingly, the Settlement Agreement is a nullity because Thermo received no consideration from Thales.

Thales does not challenge the law on preexisting duties but contends that it does not bar Thales from recovering under the Settlement Agreement because (1) the 2012 documents reflect a cancellation of all prior obligations and the creation of a new obligation; (2) Thermo received and gave consideration for taking on "new and different" obligations regarding the $12.5 million DSRA; (3) in the alternative, the 2012 obligation is enforceable as an "accord" or a written acknowledgment of a preexisting obligation; and (4) no additional consideration was necessary to support Thermo's undertaking because Globalstar received consideration and Thales incurred a detriment in their agreements with one another.[31] Although the Parties argue about their intent in executing the Agreements, the interpretation of those Agreements presents only questions of law that can be resolved by reviewing the unambiguous language of the contract.

## III. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable

---

[31] *See* Thermo Funding Company LLC's Response in Opposition to Plaintiff Thales Alenia Space France's Motion for Summary Judgment at 5.

inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[32] "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[33] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[34]

## IV.  APPLICABLE LAW

The Settlement Agreement provides that it is to be governed by the laws of the State of New York.[35] To establish a claim for breach of contract under New York law, a party must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[36] The first of these elements—the existence of a contract—is in part determined by the presence or

---

[32]  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[33]  *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[34]  *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 150 (2000).

[35]  *See Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (applying New York law where agreement so specified).

[36]  *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).

absence of consideration.[37]

In determining a party's obligations under a contract, it is not for the court to "supply a specific obligation the parties themselves did not spell out."[38] "The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint."[39]

### A.   Preexisting Duty

New York has long recognized and enforced the "preexisting duty rule." Under this rule, a promise to perform a preexisting duty cannot be valid consideration for a contract because the promisor is bound by no additional detriment, and the promisee receives no additional benefit from the bargain.[40] "[N]either the promise to do a thing, nor the actual doing of it, will be a good consideration if it is a thing which the party is bound to do by the general

---

[37]   *See, e.g., Roth v. Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990).

[38]   *Tonking v. Port Auth. of New York & New Jersey*, 3 N.Y.3d 486, 490 (2004).

[39]   *Id.*

[40]   *See Care Travel Co., Ltd. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 990 (2d Cir. 1991) (citing *Fafoutis v. Lyons*, 540 N.Y.S.2d 20, 21 (1989) ("A covenant to do what one is already under a legal obligation to do is not sufficient consideration for another contract.") (citations omitted)).

law, or by a subsisting contract with the other party."[41] Based on this rule, New York courts have declined to enforce agreements in which a party's sole promise was to perform a preexisting obligation.[42]

**B.    Consideration**

In New York, "consideration is a necessary ingredient for an enforceable contract."[43] Thus, unless no consideration is required,[44] the promisee (or some other person) must give consideration to the promisor (or some other person).[45] Consideration does not have to benefit the promisor; it can benefit a

---

[41]    *Vanderbilt v. Schreyer*, 91 N.Y. 392, 401 (1883). *Accord Goncalves v. Regent Int'l Hotels, Ltd.*, 58 N.Y.2d 206, 220 (1983) ("A promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract.").

[42]    *See Murray v. Northrop Grumann Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006) (affirming dismissal of breach of contract claim where defendant's obligations were based on preexisting legal duty to the Department of State, because "[a] promise to perform a pre-existing legal obligation does not amount to consideration") (citation omitted). *See also In re Bennett*, 149 B.R. 16, 18-19 (N.D.N.Y. 1993) (dismissing breach of contract claim because plaintiff had preexisting duty to repay defendant for prior credit).

[43]    *Roth*, 746 F. Supp. at 319.

[44]    *See, e.g.*, N.Y. Gen. Oblig. Law § 5–1103 (eliminating the consideration requirement for written and signed modifications of preexisting contracts).

[45]    *See* 22 N.Y. Jurisprudence 2d Contracts § 64 (2014).

11

third party.[46] For example, and relevant to the instant case, "the discharge of one person from liability under a debt is a sufficient consideration for the promise of another to pay."[47]

### C. Release of Contractual Obligations

Parties to a contract may mutually agree to cancel and rescind the contract.[48] In addition, one party to an agreement may release another of a duty owed to the maker of the release, and thus discharge the duty upon the occurrence of any conditions provided for in the release.[49] "The duty that is released need not be matured."[50] A release of a preexisting obligation can occur at the same time the parties enter into a new agreement, in which case the new promise is not

---

[46] *See, e.g., Mencher v. Weiss*, 306 N.Y. 1, 8 (1953) ("[I]t is fundamental that a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another."). *See also* Restatement (Second) of Contracts § 71(4) & cmt. e (1981) ("It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous."); 22 N.Y. Jurisprudence 2d Contracts § 64 ("[T]o constitute an adequate consideration for a promise, the benefit need not move to the promisor, as it may move to a third person.").

[47] *County Trust Co. of N.Y. v. Mara*, 273 N.Y.S. 597, 603 (1st Dep't 1934) (citing *Hayes v. Mestaniz*, 29 N.Y.S. 1114 (Super. Ct. 1894)).

[48] *See Rodgers v. Rodgers*, 235 N.Y. 408, 410 (1923).

[49] *See* Restatement (Second) of Contracts § 284(1) (1981) ("A release is a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition.").

[50] *Id.* cmt. a.

inadequate consideration under the preexisting duty rule.[51]

## V. DISCUSSION

### A. Preexisting Duty

Thales argues that the Release Agreement released Thermo's obligation to pay the $12.5 million DSRA obligation. Thermo counters that although the Agreements were executed on June 24, 2012, the release of claims did not take effect until more than five months later on December 31, 2012. Thermo further contends that without full rescission of the old contract, the new promise was not legally enforceable because it falls within the preexisting duty rule and fails for lack of consideration.

Thales counters by pointing out that the Settlement Agreement by its own terms "superseded and extinguished the Reimbursement Agreement upon coming into force and effect on June 24, 2012, meaning that Thermo never had two obligations to pay Thales the $12.5 million."[52] In support, Thales cites the

---

[51] *See Schwartzreich v. Bauman–Basch, Inc.*, 231 N.Y. 196, 203-05 (1921) ("Where the new contract gives any new privilege or advantage to the promisee, a consideration has been recognized, though in the main it is the same contract. . . . There is no reason that we can see why the parties to a contract may not come together and agree to cancel and rescind an existing contract, making a new one in its place. We are also of the opinion that reason and authority support the conclusion that both transactions can take place at the same time.").

[52] Pl. Mem. at 18.

introductory language of the Settlement Agreement which states that the parties intended "to settle and extinguish the obligations, disputes and differences hereinafter described"[53] as well as the merger clause language that the Agreement "supersedes all prior understandings, commitments and representations between the Parties with respect to the subject matter hereof."[54]

Thales is correct. The plain language of the Agreements extinguished Thermo's duties under the Reimbursement Agreement. Because there is no ambiguity in the contractual language, I do not consider the intent of the parties, but consider only the text of the contracts. If these sophisticated Parties intended to continue the obligations under the Reimbursement Agreement, they could and would have so provided. By their express terms, however, the Agreements extinguished the existing obligations under the Reimbursement Agreement and created new obligations for the Parties on the same subject, which the law permits them to do.

B.  **Consideration Flowed to All Three Parties**

As I noted in my June 25, 2013 opinion denying Thermo's motion to dismiss, "[t]he text of the Settlement Agreement also expresses consideration from

---

[53]   Settlement at 1.

[54]   *Id.* § 14.

Thales in exchange for Thermo's promises."[55] Because the Reimbursement Agreement was no longer in effect, the consideration the parties gave to create it was no longer in effect.

Further, Thales correctly notes that Thermo's promise is enforceable even if Thermo received nothing in the settlement. "[A] promisee who has incurred a specific, bargained for legal detriment may enforce a promise against the promisor, notwithstanding the fact that the latter may have realized no concrete benefit as a result of the bargain."[56] As a result of the settlement, Thales gave up its right to enforce a €52.7 million arbitration award and relinquished €35 million of that award. Thales waived these rights in exchange for Globalstar and Thermo's promises, including Thermo's promises (i) to liquidate its future obligation to pay Thales $12.5 million; (ii) to expedite payment of that $12.5 million if the New Contract Effective Date occurred prior to December 31, 2012, thereby enabling Thales to pay its subcontractors and to cover industrial costs associated with the new contract; and (iii) to release Thales from all liability relating to the

---

[55] *Thales Alenia Space France*, 959 F. Supp. 2d at 467.

[56] *Holt v. Feigenbaum*, 52 N.Y.2d 291, 299 (1981). *Accord AXA Inv. Managers UK Ltd. v. Endeavor Capital Mgmt. LLC*, 890 F. Supp. 2d 373, 384 (S.D.N.Y. 2012).

Construction Contract.[57] Thus Thales incurred a bargained-for legal detriment in reliance upon Thermo's promises, which serves as consideration for Thermo's promise to pay Thales the $12.5 million.

Moreover, Thermo need not have received any new consideration for its promise to pay Thales $12.5 million because a third party, Globalstar, received consideration from Thales. "Consideration does not have to flow directly to the promisor; it may flow to a third party instead. In this case, the Complaint and the Settlement Agreement clearly pled the existence of bargained-for consideration, which if not flowing directly to Thermo was instead going to benefit Globalstar."[58] Thus, even if Thermo were correct in arguing that it received no consideration, the consideration flowing between Thales and Globalstar is sufficient to make the Agreements valid and enforceable.

## VI. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED. The Clerk of the Court is directed to close this motion [Docket No. 58] and enter a judgment in favor of plaintiff in the amount of $14,296,917.81 ($12.5 million principal and 9% statutory prejudgment interest calculated from

---

[57] *See* Pl. Mem. at 24.

[58] *Thales Alenia Space France*, 959 F. Supp. 2d at 467.

January 1, 2013 through August 7, 2014).

<div style="text-align: right;">
SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.
</div>

Dated:     New York, New York
             August 7, 2014

- **Appearances** -

**For Plaintiff:**

Elliot E. Polebaum, Esq.
Eugene N. Hansen, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
elliot.polebaum@friedfrank.com

**For Defendant:**

Gerald S. Greenberg, Esq.
W. Stuart Dornette, Esq.
Matthew D. Lawless, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 357-2838
greenberg@taftlaw.com